1   WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8   REFUGIO RODRIGUEZ and JOSEPHINE          No. CV-11-01992-PHX-JAT
9   RODRIGUEZ, husband and wife,
                                             **ORDER**
10                        Plaintiffs,

11  v.

12
    CITY OF PHOENIX, a municipality;
13  MARICOPA COUNTY, a political
    subdivision of the State of Arizona;
14
15                        Defendants.
16
            Pending before the Court are Defendants Maricopa County and City of Phoenix's
17
    Motions for Summary Judgment (Docs. 55, 57).  Plaintiff Refugio Rodriguez has filed a
18
    single joint Response (Doc. 60) that does not respond to the merits of Defendants' two
19
    Motions.  Instead, Plaintiff requests that the Court deny Defendants' motions under Rule
20
    56(d).  (Doc. 60 at 2).  Additionally, Plaintiff moves to Amend the Complaint Under Rule
21
    15 and to Add Parties Under Rule 21.  (*Id.*).  The Court now rules on the motions.
22
23  I.      **BACKGROUND**

24          For purposes of the Court's resolution of the pending summary judgment motion,

25  the Court considers the relevant facts and background to be as follows.[1]

26
    _____
27          [1] Along with their Motions for Summary Judgment, Defendants have each filed a
    separate Statement of Facts in Support.  (Docs. 56, 58).  Plaintiff's Response includes
28  neither a Controverting Statement of Facts as required by Local Rule of Civil Procedure
    56.1(b), nor any discussion whatsoever of the allegedly undisputed facts presented by
    Defendants.  The Court therefore accepts Defendants' undisputed facts as true for the

### A.      Factual Background

On May 11, 2011, Officers Neidenbach and Mills were on patrol and observed Plaintiff, Refugio Rodriguez, drop something behind a small wall.  (Defendant City of Phoenix's Separate Statement of Facts in Support of Its Motion for Summary Judgment ("PHXSOF"), Doc. 58 ¶ 1).   The officers investigated, discovered two baggies of marijuana, ordered Plaintiff to stop, and chased Plaintiff after Plaintiff refused.  (*Id.* ¶¶ 2–3).  Upon catching up to Plaintiff, Plaintiff struggled, assaulted[2] Officer Mills, and the Officers attempted to physically restrain Plaintiff.  (*Id.* ¶¶ 3–5).  During the struggle, Plaintiff refused multiple commands to cease resistance, flipped onto his back, struck Officer Mills repeatedly, and grabbed Officer Mill's taser pouch inside Officer Mill's vest.  (*Id.* ¶¶ 5–7).  After taking Plaintiff into custody, paramedics examined and cleared Plaintiff, and Plaintiff was booked into jail.  (*Id.* ¶ 8).  Booking photos indicate only a minor "road rash" injury sustained by Plaintiff on his back while struggling with the Officers.  (*Id.*).  The City of Phoenix ("Phoenix") Police Department investigated the incident and concluded that the Officers' use of force was reasonable and necessary to restrain and arrest Plaintiff.  (*Id.* ¶¶ 10–11).

Upon arrival at the Maricopa County Sheriff's Office jail facility, a Correctional Health Services (a subdivision of Maricopa County) technician reviewed Plaintiff's medical condition and, in accordance with Correctional health Services' policies, referred Plaintiff to Nurse Victoria Wray.  (Defendant Maricopa County's Statement of Facts in Support of Its Motion for Summary Judgment ("MCSOF"), Doc. 56 ¶¶ 6–13).  Nurse Wray examined Plaintiff, identified no signs of head injury or neurological trauma, and did not identify any life-threatening injury or other urgent need for medical attention at an outside medical facility.  (*Id.* ¶¶ 14–21).

On May 28, 2010, Plaintiff posted bail, was released from jail, and, two hours

---

purposes of this motion.  L.R. Civ. P. 56.1(b); *see* Fed. R. Civ. P. 56(e)(2).

[2] On October 18, 2010, Plaintiff pleaded guilty to one count of Aggravated Assault on a police officer.  (PHXSOF ¶ 9).

1  later, reported to the emergency department at St. Joseph's Hospital claiming he had been
2  assaulted by the police the previous night.  (*Id.* ¶¶ 22–27).  Doctors examined Plaintiff,
3  found no significant injuries, prescribed Motrin,[3] and discharged Plaintiff less than five
4  hours after Plaintiff arrived at the hospital.  (*Id.* ¶¶ 27–33; *see* PHXSOF ¶¶ 14–16).
5  Plaintiff did not seek additional medical treatment until he presented with complaints of
6  back and chest pain one year later.  (MCSOF ¶ 33).

7      **B.     Procedural Background**

8      On May 26, 2011, Plaintiff filed the instant Complaint in Arizona Superior.
9  (Doc. 1).  Plaintiff alleged various Arizona state tort claims and Federal civil rights
10 violations under 42 U.S.C. 1983 against the Officers related to an allegation of excessive
11 force and Nurse Wray related to an alleged refusal to provide medical treatment to
12 Plaintiff.  (*Id.*).  Plaintiff further alleged that Maricopa County and Phoenix were liable
13 for the unconstitutional and tortious actions of their employees under a theory of
14 *respondeat superior* and several civil rights theories.  (*Id.*).  Defendants removed
15 Plaintiff's suit to Federal Court on October 13, 2011.  (*Id.*).

16     On November 15, 2011, the Court dismissed Nurse Wray from this suit without
17 prejudice as "Jane Doe" (Doc. 10; *see* Doc. 27 at 6).  On November 22, 2011, the Court
18 dismissed Officers Tedesco, Mills, and Neidenbach from this suit *with* prejudice per
19 stipulation of the Parties.  (Docs. 11–12).  On January 9, 2012, the Court issued its Rule
20 16 Scheduling Order.  (Doc. 19).  On May 7, 2012, the Court denied Maricopa County's
21 motion to dismiss on the grounds that the dismissal *without* prejudice of Nurse Wray (as
22 "Jane Doe") was not an adjudication on the merits of Plaintiff's claim.  (Doc. 27).
23 Phoenix did not file a Motion to Dismiss, and discovery commenced, progressed, and
24 concluded on January 31, 2013.  (*See* CM/ECF Docket; Doc. 19).  On March 14, 2013,
25 Maricopa County and Phoenix each moved for summary judgment (Docs. 55, 57) and, on
26 March 29, 2013, Plaintiff Responded by requesting the Court give Plaintiff leave to

27 
28      [3] Motrin is a non-narcotic, ibuprofen tablet available over the counter for the relief
   of pain, alleviation of fever, or reduction of inflammation.

1  amend the Complaint, add additional parties, and reopen discovery (Doc. 60); requests on

2  which the Court now rules.

3  **II.   PLAINTIFF'S MOTION TO AMMEND**

4      Plaintiff's Response (Doc. 60) includes "(1) a Motion to Amend the Complaint

5  under Rule 15 and/or (2) To Add Back as Parties, under Rule 21, Maricopa County Jail

6  Nurse VICTORIA WRAY, previously dismissed without prejudice as "Jane Doe" [(Doc.

7  27)], and Phoenix Police Officers TEDESCO, MILLS and NEIDENBACH," previously

8  dismissed *with* prejudice (Doc. 12).   To justify his motions, Plaintiff scantly provides a

9  single page that mentions Rule 15 but ignores Rule 21.   (Doc. 60 at 2).   Nonetheless, to

10  the extent possible, the Court construes Plaintiff's Response as making separate motions

11  to amend the Complaint under Rule 15 and add additional defendants under Rule 21.

12      **A.   Rule 15 Motion to Amend**

13          **1.   Legal Standard**

14      Generally, Federal Rule of Civil Procedure 15(a) governs a motion to amend

15  pleadings to add claims or parties.   However, in the present case, Rule 16 also applies

16  because Plaintiff requested leave to amend his Complaint after the Rule 16 Scheduling

17  Order deadline expired.   Therefore, it is appropriate to discuss both Rule 15 and Rule 16.

18      Rule 15(a) provides in pertinent part:

19
20      A party may amend the party's pleading once as a
    matter of course at any time before a responsive pleading is
21      served or, if the pleading is one to which no responsive
    pleading is permitted and the action has not been placed upon
22      the trial calendar, the party may so amend it at any time
    within 20 days after it is served.   Otherwise a party may
23      amend the party's pleading only by leave of court or by
    written consent of the adverse party; and leave shall be freely
    given when justice so requires.

24
25  Although the decision whether to grant or deny a motion to amend is within the trial

26  court's discretion, "Rule 15(a) declares that leave to amend 'shall be freely given when

justice so requires'; this mandate is to be heeded."   *Foman v. Davis*, 371 U.S. 178, 182

27  (1962).   "In exercising its discretion with regard to the amendment of pleadings 'a court

28  must be guided by the underlying purpose of Rule 15—to facilitate a decision on the

merits rather than on the pleadings or technicalities.' [] Thus, 'Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.' " *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citations omitted). "Generally, this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (citing *DCD Programs v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)).

The liberal policy in favor of amendments, however, is subject to limitations. After the defendant files a responsive pleading, leave to amend is not appropriate if the "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Madeja v. Olympic Packers*, 310 F.3d 628, 636 (9th Cir. 2002) (quoting *Yakima Indian Nation v. Wash. Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999)) (citation and internal quotation marks omitted). "The party opposing amendment bears the burden of showing prejudice," futility, or one of the other permissible reasons for denying a motion to amend. *DCD Programs*, 833 F.2d at 187; *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988) (stating that leave to amend should be freely given unless opposing party makes "an affirmative showing of either prejudice or bad faith").

Prejudice can result where a defendant would be forced to participate in additional discovery. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). Extending discovery can also create undue delay. *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998). Regarding futility, "[a] district court does not err in denying leave to amend where the amendment would be futile . . . or would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (citations omitted); *see also Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient." (citation omitted)). Similarly, a motion for leave to amend is futile if it can be defeated on a motion for summary judgment. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986). "However, a proposed amendment is futile only if no set of

1   facts can be proved under the amendment to the pleadings that would constitute a valid

2   and sufficient claim or defense." *Miller*, 845 F.2d at 214.

3          Rule 16, on the other hand, applies to pretrial conferences and scheduling orders.

4   This Rule provides, in pertinent part:

> (b) [The district court] shall, after receiving the report from the parties under Rule 26(f) or after consulting with the attorneys for the parties and any unrepresented parties by a scheduling conference, telephone, mail, or other suitable means, enter a scheduling order that limits the time
>
> (1) to join other parties and to amend pleadings . . . .
>
> . . . .
>
> A schedule shall not be modified except upon a showing of good cause and by leave of the district judge[.]

12  Fed. R. Civ. P. 16(b).  "Unlike Rule 15(a)'s liberal amendment policy which focuses on

13  the bad faith of the party seeking to interpose an amendment and the prejudice to the

14  opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of

15  the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d

16  604, 609 (9th Cir. 1992).  Generally, to meet its burden under Rule 16's "good cause"

17  standard, the movant may be required to show:

> (1) that [the movant] was diligent in assisting the Court in creating a workable Rule 16 [O]rder; (2) that [the movant's] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [the movant's] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [the movant] was diligent in seeking amendment of the Rule 16 [O]rder, once it became apparent that [the movant] could not comply with the [O]rder.

24  *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999).  The Ninth Circuit has

25  also recognized that, "[t]he district court may modify the pretrial schedule 'if it cannot

26  reasonably be met despite the diligence of the party seeking the extension.' " *Johnson*,

27  975 F.2d at 609.  However, "carelessness is not compatible with a finding of diligence

28  and offers no reason for a grant of relief."  *Id.*  "Although the existence or degree of

prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification . . . .  If that party was not diligent, the inquiry should end." *Id.*

With respect to the interplay between Rules 16 and 15(a), "[a]s the Ninth Circuit explained in *Johnson* [], once the district court has filed a pretrial scheduling order pursuant to Rule 16 pleadings, a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a)." *Jackson*, 186 F.R.D. at 607; *Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1232 (E.D. Cal. 1996); *see Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994); *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (finding that a party seeking to amend a pleading after the scheduling order date must first show "good cause" for not amending the complaint sooner, and if "good cause" is established, the party must demonstrate that the amendment was proper under Rule 15). "If [the court] considered only Rule 15(a) without regard to Rule 16(b), it would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).  Accordingly, the Court will first evaluate Plaintiffs' Motion under Rule 16, and then, if necessary, under Rule 15(a).

### 2.    Analysis

Here, Plaintiff's motion requests leave to "Amend the Complaint under Rule 15" (Doc. 60 at 2), but fails to attach a copy of the proposed Amended Complaint to Plaintiff's motion.[4]  Instead Plaintiff provides less than a single page of argument purportedly explaining both the substance of Plaintiff's proposed amendments and the grounds on which the Court should grant Plaintiff's motions.  (Doc. 60 at 2).  Plaintiff appears to request (*id.*), and the Court construes Plaintiff's motion as requesting, three

---

[4] Local Rule of Civil Procedure 15.1(a) requires Plaintiff to attach a copy of the proposed Amended Complaint to his Rule 15 Motion to Amend.  Plaintiff's non-compliance, alone, is sufficient grounds for denial of Plaintiff's motion.  L.R. Civ. P. 7.2(i).

amendments to the Complaint: (1) the deletion of Plaintiff's single Federal 42 U.S.C. § 1983 claim against Defendants (Count 5); (2) the addition as a defendant of Maricopa County Jail Nurse Victoria Wray;[5] and (3) the addition as defendants of three individual Phoenix Police Department officers.[6]

With regard to Rule 16, Plaintiffs' March 29, 2013 Motion makes no attempt to demonstrate "good cause" for failing to comply with the Court's Rule 16 Scheduling Order, which set a May 23, 2012 deadline for any motion to amend the complaint. (Doc. 19 at 2). Plaintiff does not argue that Plaintiff's noncompliance occurred despite Plaintiff's diligence. (Doc. 60 at 2). Instead, Plaintiff admits that he filed his Motion more than 10-months late because "Plaintiffs [sic] counsel neglected to follow the County Attorney's advice in Document 17[7] that Plaintiffs [sic] could 'dismiss his federal claims so that the case returns to state court.' " (*Id.*). Plaintiff further acknowledges that as early as December 29, 2011, Plaintiff was aware that the inclusion of individual defendants may be necessary for Plaintiff's case to proceed against Maricopa County and Phoenix. (*Id.* (explaining that in Plaintiff's Response (Doc. 15) to Maricopa County's previous motion to dismiss, Plaintiff recognized that if the Court did not remand the case to Arizona Superior Court, then Plaintiff would need to identify and add the individual nurse). Plaintiff concludes his concessions with a self-aware understatement: "[u]nfortunately, Plaintiff did not then pursue an amendment." (*Id.*).

The Court finds that Plaintiff's admitted "neglect" and "unfortunate" litigation strategy, bereft of any showing of diligence, does not sufficiently demonstrate "good cause" for the Court to amend its Rule 16 Scheduling Order to extend the deadline for filing a motion to amend the Complaint. *See Johnson*, 975 F.2d at 609 ("[C]arelessness

---

[5] On November 15, 2011, the Court dismissed Nurse Wray from the suit without prejudice as "Jane Doe" (Doc. 10; *see* Doc. 27 at 6).

[6] On November 22, 2011, the Court dismissed Officers Tedesco, Mills, and Neidenbach *with* prejudice per stipulation of the Parties. (Docs. 11–12).

[7] Doc. 17 is Defendant Maricopa County's January 3, 2012 Reply in Support of Maricopa County's previous motion to dismiss (Doc. 14).

is not compatible with a finding of diligence and offers no reason for a grant of relief."). Therefore, the Court declines to exercise its discretion to modify its Rule 16 Scheduling Order, and an application of Rule 15(a) is not necessary. *Sosa*, 133 F.3d at 1419 (holding that the Court need not evaluate Rule 15(a) unless the movant first meets the "good cause" requirement of Rule 16). Accordingly, Plaintiff's Motion to Amend the Complaint under Rule 15 (Doc. 60 at 1) is denied.

## B.    Rule 21 Motion to Add Defendants

### 1.    Legal Standard

> Rule 21 of the Federal Rules of Civil Procedure, titled "Misjoinder and Non–Joinder of Parties," provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." *Id.* The power to drop or add parties is vested to the sound discretion of the court. *See Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980); *see also Fair Hous. Dev. Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972) (citing 3A *Moore's Federal Practice* § 21.05 (1970)) (Rule 21 affords broad discretion to court in adding or dropping parties).

*Siren, Inc. v. Firstline Sec., Inc.*, No. 06-1109-PHX-RCB, 2006 WL 3257440, at *3 (D. Ariz. May 17, 2006).

Because Rule 21 gives no guidance other than that the addition of parties must be "on such terms as are *just*," Fed. R. Civ. P. 21, when "deciding whether to permit the addition of defendants, courts apply the 'same standard of liberality afforded to motions to amend pleadings under Rule 15.' " *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 302–03 (E.D.N.Y. 2013) (quoting *Soler v. G & U, Inc.*, 86 F.R.D. 524, 528 (S.D.N.Y. 1980)); *c.f. Pan Am. World Airways, Inc. v. U.S. Dist. Ct. for C.D. Cal.*, 523 F.2d 1073, 1079–80 (9th Cir. 1975) (where the Court of Appeals uses Rules 19 and 20 to furnish standards for the addition of a plaintiff because "[b]y itself, Rule 21 cannot furnish standards for the propriety of joinder, for it contains none"). "Thus, leave to amend a complaint to assert claims against additional defendants should be denied only because of undue delay, bad faith, futility, or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court."

- 9 -

*Allstate*, 916 F. Supp. 2d at 303 (internal quotation and citation omitted).  "In addition, 'the court typically will deny a request that comes so late in the litigation that it will delay the case or prejudice any of the parties to the action.' "  *S.E.C. v. Leslie*, No. C 07-3444, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010) (quoting *City of Syracuse v. Onondaga Cnty.*, 464 F.3d 297, 308 (2d Cir. 2006) (citing to 7 *Wright, Miller & Kane, Federal Practice and Procedure* § 1688.1 at 510 (West 2001))).

### 2. Analysis

Here, Plaintiff appears to request the addition as defendants of (1) Maricopa County Jail Nurse Victoria Wray; and (2) three individual Phoenix Police Department officers.  (Doc. 60 at 2).

First, with regard to Nurse Wray, the Court finds that the addition of Nurse Wray as a defendant would be futile.  Nurse Wray was never individually served with a notice of claim[8] as required by the Arizona Notice of Claim Statute, A.R.S. § 12-821.01(A). (Doc. 61 at 7–9; Doc. 62 ¶ 1, Ex. 1).  Consequently, the statute bars Plaintiff's claims against Nurse Wray.  *Salerno v. Espinoza*, 115 P.3d 626, 628 ¶ 7 (Ariz. Ct. App. 2005). Moreover, because Plaintiff admits that he knew Nurse Wray should be added to the litigation no later than December 29, 2011 (*see* Doc. 60 at 2), the Court finds that Plaintiff's more than 10-month late motion to add Nurse Wray is an "undue delay."

Second, with regard to the three individual officers, the Court finds that the addition of the Officers as defendants would be futile.  Pursuant to the Parties' stipulation, the Court dismissed the Officers from Plaintiff's suit *with* prejudice. (Docs. 11, 12).  "[A] stipulated dismissal of an action with prejudice in a federal district court generally constitutes a final judgment on the merits and precludes a party from reasserting the same claims in a subsequent action in the same court."  *Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1052 (9th Cir. 2005); *see also In re Marino*, 181 F.3d

---

[8] Plaintiff does not dispute this fact (*see* Doc. 60) and failed to Reply to Defendant Maricopa County's Response (Doc. 61) in which Maricopa County submitted a Supplemental Statement of Fact, supported by affidavit, stating that Nurse Wray had never been served a Notice of Claim (Doc. 62 ¶ 1, Ex. 1).

1142, 1144 (9th Cir. 1999) (Under *res judicata*, "a dismissal with prejudice has *res judicata* effect [and] . . . bars any further action between the parties on the issues subtended by the case.").

In sum, because the Court finds that the addition of Nurse Wray or the Officers would be futile, the Court finds that adding either party would not be "just" as required by Rule 21.  Furthermore, the Court finds that Plaintiff's request comes so late in the litigation that it will delay the case and prejudice Defendants.  Accordingly, Plaintiff's Motion to Add Back as Parties under Rule 21 (Doc. 60 at 1) is denied.

### III.   MOTIONS FOR SUMMARY JUDGMENT

Defendants   Maricopa County and Phoenix have each moved for summary judgment.  (Docs. 55, 57).  Plaintiff has filed a single joint Response (Doc. 60) that does not respond to the merits of Defendants' two Motions.  Instead, Plaintiff requests Rule 56(d) relief.  (Doc. 60 at 2).  The Court first considers Plaintiff's Rule 56(d) request, and second considers the merits of Defendants' two motions.

### A.   Relief Under Rule 56(d)

Pursuant to Federal Rule of Civil Procedure 56(d),

> **When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  The party requesting Rule 56(d) relief must show that: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home and Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (internal citations omitted).  "Failure to comply with these requirements is a proper ground for denying discovery and proceeding to summary

judgment." *Id.* (internal quotation and citation omitted).

Here, in a single sentence, Plaintiff requests that the Court deny Defendants' Motions for Summary Judgment on Rule 56(d) grounds. (Doc. 60 at 2). Plaintiff makes no attempt to identify what essential facts are unavailable but discoverable, let alone specify reasons in an affidavit or declaration. (Doc. 60 at 2). Indeed, Plaintiff makes no argument whatsoever as to why discovery should be reopened when Defendants' motions were filed on March 14, 2013, six weeks after the January 31, 2013 discovery deadline. (*See* Docs. 19, 55, 57). Plaintiff's abject noncompliance with Rule 56(d) provides the Court no recourse but to deny Plaintiff's request. Accordingly, the Court will adjudicate Defendants' Motions for Summary Judgment on their merits.

### B.   Legal Standard for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support that assertion by "citing to particular parts of materials in the record," including depositions, affidavits, interrogatory answers or other materials, or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.' "

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)).  A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment.  *Id.* at 247–48.  Further, because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage.  *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (internal citations omitted).

### C.       Maricopa County's Motion for Summary Judgment

Plaintiff's Complaint (Doc. 1) includes three Counts against Maricopa County: (1) Count Three, Willful or Wanton Negligence; (2) Count Four, Intentional or Reckless Inflection of Emotional Distress; and (3) Count Five, Civil Rights Violations under 42 U.S.C. § 1983.  Counts Three and Four base Maricopa County's liability solely on r*espondeat superior*.  Count Five bases Maricopa County's liability on alleged unconstitutional policies, practices, or procedures.

#### 1.       Arizona State Law: Counts Three & Four—*Respondeat Superior*

Plaintiff claims that a Maricopa County employee, Jane Doe,[9] refused Plaintiff medical treatment with willful and wanton negligence, and thereby caused Plaintiff severe emotional distress.  (Doc. 1 ¶¶ 63–65, 69–70).  Plaintiff further alleges that Maricopa County is responsible for the tortious actions of its employee, Jane Doe,

---

[9] At this point in the litigation, Jane Doe is known to be Nurse Wray.  However, because Plaintiff declined to timely amend his Complaint to add Nurse Wray as an individual Defendant, the Complaint still alleges that "Jane Doe" committed negligent or tortious acts.

1    pursuant to the principle of *respondeat superior.* (*Id.* ¶¶ 66, 71).

2         Maricopa County argues that it cannot be liable for the state law tort claims under

3    *respondeat superior* because the individual "Jane Doe" defendant has been dismissed and

4    therefore there is no underlying tortfeasor.  "An employer is vicariously liable for the

5    negligent or tortious acts of its employee acting within the scope and course of

6    employment."  *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix,*

7    *Inc.*, 5 P.3d 249, 254 ¶ 17 (Ariz. Ct. App. 2000).  First, because Jane Doe has been

8    dismissed from this case and Plaintiff never added Nurse Wray as a party, there is no

9    "employee" for Plaintiff to point to establish an employee/employer relationship.

10   Similarly, the lack of a specific employee precludes Plaintiff from establishing that

11   Maricopa County's employee caused damage to Plaintiff "within the scope and course of

12   employment."  Moreover, because there is no underlying employee, there can be no

13   determination that the non-existent employee acted negligently or tortiously.  Thus,

14   because Maricopa County's liability is solely derivative of its employee under *respondeat*

15   *superior* (Plaintiff does not allege that Maricopa County is a joint-tortfeasor), "there is no

16   fault to impute and the party potentially vicariously liable [(Maricopa County)] is not

17   responsible for the fault of the other person."  *Law v. Verde Valley Med. Ctr.*, 170 P.3d

18   701, 705 ¶13 (Ariz. Ct. App. 2007).

19        Moreover, even if Plaintiff's *respondeat superior* claim could proceed against

20   Maricopa County without identifying a particular employee and examining her conduct,

21   the undisputed facts show that Nurse Wray's conduct was reasonable, appropriate, and

22   complied with the applicable standards of care.  (MCSOF ¶¶ 46, 55). Thus, there is no

23   genuine dispute of material fact that a Maricopa County employee acted negligently or

24   tortiously.  Therefore, Plaintiff cannot demonstrate an essential element of his *respondeat*

25   *superior* claims and Maricopa County is entitled to summary judgment.  Accordingly, the

26   Court grants Defendant Maricopa County's Motion for Summary Judgment (Doc. 55)

27   with respect to Counts Three and Four.

28

## 2. Federal Law: Count Five—Section 1983

Plaintiff claims that a Maricopa County employee, Jane Doe, unconstitutionally violated Plaintiff's civil rights by needlessly and unreasonably denying Plaintiff access to immediate emergency medical care. (Doc. 1 ¶ 75). Plaintiff further alleges that Maricopa County is responsible for the unconstitutional actions of its employee, Jane Doe, because (1) Jane Doe acted in accordance with Maricopa County's unconstitutional policies or practices; (2) Maricopa County instructed Jane Doe to deny Plaintiff medical treatment; (3) Maricopa County improperly hired, trained, and supervised, Jane Doe; and (4) Maricopa County failed to adequately discipline Jane Done for prior improper conduct. (*Id.* at ¶ 76).

First, the Court finds that Plaintiff cannot demonstrate the existence of an unconstitutional Maricopa County policy, practice, or procedure. "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dept. of Soc. Servs. of the City of N.Y. et al.*, 436 U.S. 658, 691 (1978). Under *Monell*, municipal liability may be based on any of three theories: (1) an expressly adopted official policy; (2) a longstanding practice or custom; or (3) the decision of a person with final policymaking authority. *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Here, Plaintiff appears to claim that Maricopa County's unconstitutional policies were to deny prisoners access to medical care (MCSOF ¶ 58) and "to help cover up acts of other police agencies by delaying immediate Emergency Room treatment which dissipated the proximate cause from the City of Phoenix Police brutality." (MCSOF ¶ 56 (quoting Plaintiff's Responses to Defendant's 2nd Set of Interrogatories, *id.* at Ex. 13)). However, the undisputed facts demonstrate that Maricopa County had no such express or implied policies, practices, or procedures. (*Id.* ¶¶ 57–59, 70). Thus, there is no genuine dispute of material fact that Maricopa County had an unconstitutional policy, procedure, or practice. Consequently, Plaintiff cannot demonstrate an essential element of his *Monell* § 1983 claim against Maricopa County.

Second, the Court finds that Plaintiff cannot demonstrate that Maricopa County

instructed Jane Doe to deny Plaintiff medical treatment.  Here, it is undisputed that Nurse Wray was never instructed to deny a patient emergency medical care.  (MCSOF ¶ 70). Moreover, the undisputed facts demonstrate that Nurse Wray did not apply any of Maricopa County's existing policies, practices, and procedures in an unconstitutional way.  (*See id.* ¶¶ 47–55 (establishing that "Nurse Wray's dealings with [Plaintiff] were reasonable and appropriate and complied with the standard of care for a reasonable correctional health nurse under like or similar circumstances")).  Moreover, it is undisputed that, despite not needing emergency medical care (*id.* ¶¶ 15, 19–20, 29, 63), Plaintiff was examined at and released by the hospital without further treatment. (*Id.* ¶¶ 31, 33).  Thus, there is no genuine dispute of material fact that Maricopa County instructed Nurse Wray to deny Plaintiff medical treatment.  Consequently, Plaintiff cannot demonstrate an essential element of his § 1983 claim against Maricopa County.

Third, the Court finds that Plaintiff cannot demonstrate that Maricopa County improperly hired, trained, or supervised Jane Doe.  (*See* Doc. 55 at 12–15).  To prevail on a § 1983 claim of improper hiring, training, or supervision, "[a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 411 (1997); *see City of Canton, Oh. v. Harris*, 489 U.S. 378, 388 (1989) (improper training requires a failure to train so inadequate that it "amounts to deliberate indifference to the rights of persons" impacted by the training); *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (sufficiently inadequate supervision of an employee may amount to deliberate indifference for purposes of establishing § 1983 municipal liability).  Here, the undisputed facts demonstrate that Correctional Health Services'[10] hiring, training, and supervision policies and practices conform to the reasonable and prevailing practices in the community and are designed and implemented to avoid personnel violating patients'

---

[10] Correctional Health Services is the subdivision of Maricopa County that directly employed Nurse Wray.

rights.  (MCSOF ¶¶ 71–85).  Thus, there is no genuine dispute of material fact that Maricopa County acted with deliberate indifference when hiring, training, and supervising Nurse Wray.  Consequently, Plaintiff cannot demonstrate an essential element of his § 1983 improper hiring, training, and supervision claims against Maricopa County.

Fourth, the Court finds that Plaintiff cannot demonstrate that Maricopa County failed to adequately discipline Jane Doe for prior improper conduct.  Like an improper hiring, training, or supervision claim, to prevail on a § 1983 failure to discipline claim, Plaintiff must demonstrate deliberate indifference by the municipality.  *Long v. City & Cnty. of Honolulu*, 378 F.Supp.2d 1241, 1246–48 (D. Haw. 2005).  Additionally, Plaintiff must demonstrate previous grounds to discipline the individual employee, a municipal policy not to discipline, and causation.  *Id.*  Here, Plaintiff does not point to any fact suggesting that Nurse Wray ever previously provided grounds for discipline, let alone that Maricopa County acted with deliberate indifference towards disciplining Nurse Wray or any other employee.  (Doc. 60).  In contrast, it is undisputed that Maricopa County does not hire medical professionals with previous disciplinary issues and implements its policies and procedures in order to avoid the violation of patient's rights.  (MCSOF ¶¶ 83–84).  Thus, there is no genuine dispute of material fact that Maricopa County acted with deliberate indifference when disciplining (or failing to discipline) Nurse Wray.  Consequently, Plaintiff cannot demonstrate an essential element of his § 1983 failure to discipline claim against Maricopa County.

In sum, Plaintiff cannot demonstrate at least one essential element in each of his § 1983 claims against Maricopa County.  Thus, Maricopa County is entitled to summary judgment.  Accordingly, the Court grants Maricopa County's Motion for Summary Judgment (Doc. 55) with respect to Count Five.

### D.    City of Phoenix's Motion for Summary Judgment

Plaintiff's Complaint (Doc. 1) includes five Counts against Phoenix: (1) Count One, Assault and Battery; (2) Count Two, Negligence *Per Se*; (3) Count Three, Willful or

Wanton Negligence; (4) Count Four, Intentional or Reckless Infliction of Emotional Distress; and (5) Count Five, Civil Rights Violations under 42 U.S.C. § 1983.  Counts One through Four base Phoenix's liability solely on r*espondeat superior*.  Count Five bases Phoenix's liability on alleged unconstitutional policies, practices, or procedures.

### 1.   Arizona State Law: Counts One, Two, Three, & Four—*Respondeat Superior*

Plaintiff claims that three Phoenix Police Department Officers either employed excessive force when arresting Plaintiff or failed to intervene when other officers employed excessive force, and thereby caused Plaintiff severe physical injuries and emotional distress.  (Doc. 1 ¶¶ 44–49, 53–55, 59–61, 69–70).  Plaintiff further alleges that Phoenix is responsible for the tortious actions of its employee officers pursuant to the principle of *respondeat superior*.  (*Id.* ¶¶ 50, 54, 62, 71).

Phoenix argues that it cannot be liable for the state law tort claims under *respondeat superior* because the three individual officers have been dismissed from this suit with prejudice and therefore there is no underlying tortfeasor.  "An employer is vicariously liable for the negligent or tortious acts of its employee acting within the scope and course of employment."  *Baker*, 5 P.3d at 254 ¶ 17.  "When a judgment on the merits—including a dismissal with prejudice—is entered in favor of the 'other person' in A.R.S. § 12–2506(D)(2) (such as each [officer] here), there is no fault to impute and the party potentially vicariously liable ([Phoenix] here) is not responsible for the fault of the other person."  *Law*, 170 P.3d at 705 ¶ 13.  Because *respondeat superior* for the actions of the Officers is the *sole* basis for Plaintiff's claims against Phoenix, Phoenix is entitled to summary judgment.  Accordingly, the Court grants Phoenix's Motion for Summary Judgment (Doc. 57) with respect to Counts One, Two, Three, and Four.

### 2.   Federal Law: Count Five—Section 1983

Plaintiff claims that three individual Phoenix Police officers unconstitutionally violated Plaintiff's civil rights by employing excessive force against Plaintiff. (Doc. 1 ¶ 73).  Plaintiff further alleges that Phoenix is responsible for the unconstitutional actions of its employees, the Officers, because (1) the Officers acted in accordance with

Phoenix's unconstitutional policies or practices; (2) Phoenix improperly hired, trained, and supervised the Officers; and (3) Phoenix failed to adequately discipline the Officers for prior improper conduct.  (*Id.* at ¶ 74).

First, the Court finds that Plaintiff cannot demonstrate the existence of an unconstitutional Phoenix policy, practice, or procedure.  "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell*, 436 U.S. at 691.  Under *Monell*, municipal liability may be based on any of three theories: (1) an expressly adopted official policy; (2) a longstanding practice or custom; or (3) the decision of a person with final policymaking authority.  *Lytle*, 382 F.3d at 982.  Here, Plaintiff scantly alleges that Phoenix's policies, practices, or customs "contributed to the illegal actions of the officers."  (Doc. 1 ¶ 74).  However, Plaintiff offers neither any factual allegations nor makes an attempt to specifically identify which, if any, of Phoenix's policies, practices, or customs "contributed" to the alleged violation of Plaintiff's constitutional rights.  (*See* Doc. 1 ¶ 74; Doc. 60; Doc. 57 at 7).  Such a bare recitation of an element of the cause of action, alone, is insufficient to support Plaintiff's claim and create a genuine dispute of material fact.  *Cf. AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (where the court applied the motion to dismiss standard from *Twombly* and *Iqbal*, which is more lenient that the *Celotex* summary judgment standard, and held that a conclusory allegation that defendant county had unconstitutional policy, practices, or customs relating to the care and custody of dependent minors failed to state a claim).

Moreover, the undisputed facts demonstrate that Phoenix had an express policy, practice, and custom of investigating complaints (including claims of excessive force) against police officers.  (*See* PHXSOF ¶¶ 10–11, 17–19).  The existence of such policies supports the reasonable inference that Phoenix did not have policies, practices, or customs that "contributed" to the officer's alleged unconstitutional conduct in this case.  Thus, there is no genuine dispute of material fact that Phoenix had an unconstitutional policy, procedure, or practice, and Plaintiff cannot demonstrate an essential element of his *Monell* § 1983 claim against Phoenix.

Second, the Court finds that Plaintiff cannot demonstrate that Phoenix improperly hired, trained, or supervised the officers. (*See* Doc. 57 at 7–9). To prevail on a § 1983 claim of improper hiring, training, or supervision, "[a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Brown*, 520 U.S. at 411; *see City of Canton*, 489 U.S. at 388 (improper training requires a failure to train so inadequate that it "amounts to deliberate indifference to the rights of persons" impacted by the training); *Dougherty*, 654 F.3d at 900 (sufficiently inadequate supervision of an employee may amount to deliberate indifference for purposes of establishing § 1983 municipal liability). Here, Plaintiff again fails to offer any factual allegation, let alone evidence, which could be interpreted as supporting that Phoenix acted with any sort of deliberate indifference when hiring, training, or supervising the officers. (*See* Doc. 1 ¶ 74; Doc. 60; Doc. 57 at 7–9). Moreover, the undisputed facts demonstrate that the Officers' backgrounds provided no indication of any propensity to violate a person's constitutional rights (PHXSOF ¶ 17) and the City of Phoenix followed its policies of reviewing (supervising) the officers' use of force (*id.* ¶ 10–11). Thus, there is no genuine dispute of material fact that Phoenix acted with deliberate indifference when hiring, training, and supervising the Officers. Consequently, Plaintiff cannot demonstrate an essential element of his § 1983 improper hiring, training, and supervision claims against Phoenix.

Third, the Court finds that Plaintiff cannot demonstrate that Phoenix failed to adequately discipline the Officers for prior improper conduct. Like an improper hiring, training, or supervision claim, to prevail on a § 1983 failure to discipline claim, Plaintiff must demonstrate deliberate indifference by the municipality. *Long*, 378 F. Supp. 2d at 1246–48. Additionally, Plaintiff must demonstrate previous grounds to discipline the individual officers, a municipal policy not to discipline, and causation. *Id.* Here, the undisputed facts demonstrate that Phoenix adequately investigated prior complaints (including of excessive force) against the Officers and subsequently disciplined the

1   Officers appropriately.   (PHXSOF ¶¶ 18–19).   Thus, there is no genuine dispute of
2   material fact that Phoenix acted with deliberate indifference when disciplining (or failing
3   to discipline) the Officers.   Consequently, Plaintiff cannot demonstrate an essential
4   element of his § 1983 failure to discipline claim against Phoenix.

5        In sum, Plaintiff cannot demonstrate at least one essential element in each of his
6   § 1983 claims against Phoenix.   Thus, Phoenix is entitled to summary judgment.
7   Accordingly, the Court grants Phoenix's Motion for Summary Judgment (Doc. 57) with
8   respect to Count Five.

9   **IV.   CONCLUSION**

10       Accordingly,

11       **IT IS ORDERED** that Plaintiff's Motions to Amend the Complaint Under Rule
12   15, to Add Parties Under Rule 21, and for Rule 56(d) Relief (Doc. 60) are DENIED.

13       **IT IS FURTHER ORDERED** that Defendant Maricopa County's Motion for
14   Summary Judgment (Doc. 55) is GRANTED.

15       **IT IS FURTHER ORDERED** that Defendant the City of Phoenix's Motion for
16   Summary Judgment (Doc. 57) is GRANTED.

17       **IT IS FINALLY ORDERED** that because this Order resolves all remaining
18   Claims against all remaining Defendants, the Clerk of the Court shall enter Judgment for
19   the remaining Defendants and Plaintiff shall take nothing.

20       Dated this 19th day of March, 2014.

21
22
23
24                                    James A. Teilborg
25                            Senior United States District Judge
26
27
28